E-FILED
Friday, 17 February, 2023  11:53:03 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHAWN DEHAVEN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22-4120 |
| | ) | |
| SCOTT BENZIGER, et.al., | ) | |
| Defendants | ) | |

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for consideration of Plaintiff's Motion for Leave to File an Amended Complaint. [7]

Plaintiff's original complaint was dismissed as a violation of Federal Rule of Civil Procedure 8 and for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. §1915A. *See* October 31, 2022 Merit Review Order.  Plaintiff had failed to provide enough information to clearly articulate a violation of his constitutional rights and it was unclear if the Court had received all pages of Plaintiff's complaint. Therefore, Plaintiff was given additional time to file an Amended Complaint clarifying his allegations.

Plaintiff has now submitted his Amended Complaint which was filed as a Motion for Leave to Amend. [7]  The motion is granted pursuant to Federal Rule of Civil Procedure 15. [7].

The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's Amended Complaint, and through such process to identify and dismiss any legally insufficient

1

claim, or the entire action if warranted.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff has identified four Defendants including Hancock County Sheriff's Deputies Wes Woolson and Josh Smith, Dallas City Police Officer Hannah Brown, and Sheriff Scott Bentzinger.

Plaintiff says on September 13, 2020, Plaintiff was working his motorcycle's brakes.  He went for a test ride and saw Defendant Hancock County Sheriff's Deputy Woolson.   The officer then "radioed dispatch" and was advised Plaintiff's driver's license was revoked. (Amd. Comp. p. 4).

Plaintiff admits the officer pulled him over, told Plaintiff he was going to jail, and "[a]t this point, Plaintiff fled." (Amd. Comp, p. 4).  Plaintiff says the Defendant began to chase him along with Defendant Deputy Smith and Defendant Police Officer Brown. Plaintiff says the Defendants threw "stop sticks" in an unsuccessful attempt to stop him. (Amd. Comp, p. 5).  Plaintiff also maintains the officers tried to execute a "rolling roadblock.". (Amd. Comp., p. 5).   Plaintiff says Defendant Brown pulled in front of him causing Plaintiff to crash into the back of her vehicle and into the side of Defendant Woolson's vehicle.  Plaintiff claims he veered into a soybean field where he was thrown from his motorcycle and "slammed into the ground injuring head and neck." (Amd. Comp., p. 5).

2

Plaintiff has previously provided portions of the Defendant Officer's reports. (Comp.)  These reports contradict some of Plaintiff's claims.  For instance, the officers stated they "radioed for EMS to respond, but (Plaintiff) had no injuries and said he was fine." (Comp, p. 4); *see also* (Comp, p. 2, "minor injuries").  Nonetheless, the Court must accept all well-pled facts as true and draw all permissible inferences in the plaintiff's favor when reviewing the sufficiency of a complaint. *See Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018).

After the stop, Plaintiff admitted he had methamphetamine with him which the officers found in his wallet (Comp., p. 2). Plaintiff was then charged with possession of methamphetamine, aggravated fleeing and eluding an officer, driving on a revoked license, and operating a vehicle without insurance. (Comp., p. 2).  Plaintiff apparently plead guilty to the charges, but he was subsequently arrested on an unrelated claim which led to his current incarceration in the Illinois Department of Corrections (IDOC).[1]

Plaintiff first claims Defendant Woolson violated his constitutional rights because the officer had no probable cause to stop Plaintiff.  "Probable cause exists if, at the time of arrest, the officers possess knowledge from reasonably trustworthy information that is enough to warrant a prudent person in believing that a suspect has committed, or is committing, a crime." *O'Boyle v. Wettengel*, 2019 WL 3997141, at *5 (E.D.Wis., 2019) *citing United States v. Brown*, 366 F.3d 456, 458 (7th Cir. 2004).  In Illinois,

---

[1] *See* IDOC, Offender Search, https://idoc.illinois.gov/offender/inmatesearch.html, (last visited Feb. 15, 2023.

it is a crime to operate a motorcycle with a revoked driver's license. *See* 625 ILCS 5/6-303. According to Plaintiff's complaint, police dispatch verified Plaintiff's license was revoked prior to the stop. Therefore, Defendant Woolson had reason to believe Plaintiff had broken the law. *O'Boyle,* 2019 WL 3997141, at *5; *see also U.S. v. Mounts*, 248 F.3d 712, 715–16 (7th Cir. 2001)(officers had probable cause to arrest after observing plaintiff driving and police dispatch advised his officers plaintiff's license was revoked). Plaintiff further admits committing an additional crime when he fled after the officer pulled him over.

Plaintiff next states the officers' decision to chase him as well as the use of stop sticks and a rolling roadblock were violations of Hancock County Sheriff's Department policies. A violation of department policy or procedures is not in itself a constitutional violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003); *Wilson v. Dart*, 2012 WL 2905767, at *2 (N.D.Ill. July 13, 2012).

However, Plaintiff also appears to allege the three officers used excessive force in violation of his constitutional rights. Plaintiff says the officers struck his vehicle and forced him off the road. As a result, Plaintiff claims he was injured including current, "regular and debilitating headaches." (Amd. Comp, p. 13).

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Amend. IV. "In the context of a police pursuit, a Fourth Amendment seizure does not occur unless an officer intentionally and forcibly halts the fleeing suspect." *Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007), *citing County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (concluding that no seizure occurred where the police

4

accidentally struck and killed a motorcyclist during a high-speed pursuit).  "Thus, a plaintiff bringing a Fourth Amendment claim in a § 1983 case grounded on a police chase 'has the burden of proving two things: that the officer forcibly stopped the vehicle and that the contact was intentional.'" *Estate of Dane Wourms v. Fields*, 2012 WL 12868291, at *4 (W.D.Wis. Dec. 26, 2012*), quoting Steen*, 486 F.3d at 1022. "Whether the force used to effect a seizure is excessive depends on the totality of circumstances under an objective reasonableness standard." *Marion v. City of Corydon, Ind.*, 559 F.3d 700, 705 (7th Cir. 2009) (analyzing Fourth Amendment seizure claim arising out of police pursuit).  For the purposes of notice pleading, Plaintiff has articulated a Fourth Amendment claim against Defendants Woolson, Smith, and Brown.

Finally, Plaintiff claims Defendant Hancock County Sheriff Bentzinger failed to properly supervise his officers.  The mere fact that a defendant was a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 USC §1983. *See Smith v. Gomez*, 550 F.3d 613, 616 (7th Cir. 2008)(supervisor liability not permitted under § 1983); *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992)(supervisors are not liable for the errors of their subordinates.  Plaintiff has also failed to articulate an official capacity claim against the Defendant as he admits the officers were not following established policies. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Therefore, the Court will dismiss Defendant Bentzinger.

Plaintiff has also renewed his motion for appointment of counsel. [8]; *see also* [5]. In considering Plaintiff's motion, the Court considers two questions.  First, "has the

indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993). Plaintiff has demonstrated at least some attempt to find counsel on his own. [5]

Second, the Court determines "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt,* 503 F.3d at 655. The Court must consider all aspects of the litigation including gathering evidence and responding to motions. *Eagan v. Dempsey*, 2021 WL 456002, at *8 (7th Cir. 2021).

Further complicating the issue, the Court cannot require an attorney to accept *pro bono* appointment in a civil case. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992).

> Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).

Ultimately "[t]he question is not whether a lawyer would present the case more effectively than the *pro se* plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant." *Pruitt,* 503 F.3d at 655 (internal quotation omitted). Instead, the test is whether the litigant is competent to litigate his own claims. *Id.*

Plaintiff says his claim is complex, he has limited knowledge of the law, and his incarceration will limit his ability to litigate his claims. Plaintiff's claim is not complex.

He has demonstrated he is capable of describing what happened and he has copies of relevant police reports.  Once the Defendants are served, the Court will enter a Scheduling Order with information to assist Plaintiff during the discovery process.  If Plaintiff has any medical records confirming his injury, he should be able to obtain those during discovery.

The Court does not have enough attorneys willing to represent pro se prisoners to appoint counsel to individuals based only on their incarceration.  However, if Plaintiff has difficulty meeting a deadline due to his access to legal materials, he may file a motion requesting additional time which explains how and when he requested those materials and the response he received.

Based on the record before the Court, Plaintiff appears competent to represent himself and his motion is denied. [8].

Finally, Plaintiff has filed a motion for a free copy of his complaint. [9].  Plaintiff is advised he must not send originals of any documents to the Clerk or the Court.  Plaintiff is responsible for making and keeping his own copies of any filings.  The motion is denied, but the Court will direct the Clerk to send Plaintiff information concerning the costs of copies. [9].

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges Defendants Hancock County Sheriff's Deputies Wes Woolson and Josh Smith, and Dallas City Police Officer Hannah Brown violated his Fourth Amendment rights on September 13, 2020. The claim is stated

against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk.  A motion to dismiss is not an answer.  The answer should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Order.  In general, an answer sets forth Defendants' positions.  The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants.  Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.   The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Grant Plaintiff's Motion for Leave to File an Amended Complaint., [7]; 2) Dismiss Defendant Sheriff Scott Bentzinger for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 3) Deny Plaintiff's motion for appointment of counsel, [8]; 4) Deny Plaintiff's motion for copies [9]. The Clerk is directed to send information concerning how to obtain copies and the associated costs. 5) Attempt service on Defendants pursuant to the standard procedures; 6) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 7) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 17th day of February,  2023.




s/James E. Shadid

_____

JAMES E. SHADID
UNITED STATES DISTRICT JUDGE